UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

THOMAS MASSIE, *et al.*,

               *Plaintiffs,*

       v.

CENTERS FOR DISEASE
CONTROL AND PREVENTION, *et al.*,

               *Defendants.*

Civil Action No. 22-0031-BJB-HBB

# OPPOSITION TO PLAINTIFFS'
# MOTION FOR A PRELIMINARY INJUNCTION

# CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.    Statutory and Regulatory Background .................................................................2

    B.    The COVID-19 Pandemic .................................................................................4

    C.    The Challenged Order .......................................................................................4

    D.    This Lawsuit .......................................................................................................5

LEGAL STANDARD ..........................................................................................................6

ARGUEMENT ......................................................................................................................6

I.    Plaintiffs have not shown irreparable harm. .................................................................6

II.    Plaintiffs are unlikely to succeed on the merits. ..........................................................13

    A.    The transportation mask order falls squarely within CDC's statutory and regulatory authority. ..........................................................................................13

    B.    The Public Health Services Act does not offend the nondelegation doctrine. ...........20

III.    The public interest weighs against a preliminary injunction. .......................................21

IV.    Any relief would appropriately be limited to Plaintiff Paul and Massie. ....................22

CONCLUSION....................................................................................................................24

# AUTHORITIES

<u>**Cases**</u>

*A.L.A. Schechter Poultry Corp. v. United States,*
  295 U.S. 495 (1935) ................................................................................................20

*Abadi v. TSA,*
  No. 21-1258 (D.C. Cir. 2021) .................................................................................13

*Ala. Ass'n of Realtors v. HHS,*
  141 S. Ct. 2485 (2021) ........................................................................................*passim*

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.,*
  712 F.3d 775 (2d Cir. 2013) ...................................................................................17

*Am. Power & Light Co. v. SEC,*
  329 U.S. 90 (1946) ..................................................................................................20

*Andreadakis v. CDC,*
  No. 22-cv-0052 (E.D. Va. 2022) ............................................................................23

*Andreadakis v. TSA,*
  No. 21-2173 (4th Cir. 2021) ...................................................................................12

*Barnhart v. Thomas,*
  540 U.S. 20 (2003) ..................................................................................................17

*Bauman v. Twp. of Tittabawassee,*
  No. 14-cv-12841, 2014 WL 5499285 (E.D. Mich. Oct. 30, 2014) ........................9

*Benisek v. Lamone,*
  138 S. Ct. 1942 (2018) ............................................................................................11

*Big Time Vapes, Inc. v. FDA,*
  963 F.3d 436 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2746 (2021) ................. 20, 21

*Bigtree v. CDC,*
  No. 22-cv-0224 (W.D. Tex. 2022) ..........................................................................23

*Bobay-Somers v. HHS,*
  No. 21-cv-0335 (N.D. Ind. 2021) ...........................................................................23

*Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.,*
  4 F.4th 1220 (11th Cir. 2021), *vacated as moot*, 20 F.4th 1385 (11th Cir. 2021)..................10

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ................................................................................................22

*Carlin v. CDC*,
    No. 22-cv-0800 (D.D.C. 2022) ...................................................................................23

*Chenge v. CDC*,
    No. 22-cv-0165 (W.D. Mich. 2022) ............................................................................23

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ...................................................................................................16

*City of Los Angeles v. Lyons*,
    461 U.S. 95, (1983) .......................................................................................................8

*Consol. Canal Co. v. Mesa Canal Co.*,
    177 U.S. 296 (1900) ......................................................................................................7

*Corbett v. TSA.*,
    19 F.4th 478 (D.C. Cir. 2021) ..................................................................................1, 4

*D.T. v. Sumner Cty. Schs.*,
    942 F.3d 324 (6th Cir. 2019) ...................................................................................6, 13

*Daunt v. Benson*,
    956 F.3d 396 (6th Cir. 2020) ........................................................................................6

*Dep't of Homeland Sec. v. New York*,
    140 S. Ct. 599 (2020) .................................................................................................23

*DetailXPerts Franchise Sys. LLC v. Deck Inc.*,
    No. 19-cv-10037, 2019 WL 5294354 (E.D. Mich. Oct. 18, 2019) .........................11

*Doe v. Dep't of Transp.*,
    No. 22-cv-0402 (W.D. Pa. 2022) ...............................................................................23

*Doe v. The Ohio State Univ.*,
    136 F. Supp. 3d 854 (S.D. Ohio 2016) ......................................................................10

*Dunn v. Retail Clerks Int'l Ass'n, AFL-CIO, Loc. 1529*,
    299 F.2d 873 (6th Cir. 1962) ........................................................................................6

*Eades v. TSA*,
    No. 21-3362 (8th Cir. 2021) .......................................................................................12

*Elrod v. Burns*,
    427 U.S. 347 (1976) ......................................................................................................9

*Family Research Council Action, Inc. v. Biden*,
    No. 22-cv-0209 (N.D. Tex. 2022) ..............................................................................23

*Faris v. CDC,*
    No. 22-cv-0023 (W.D. Ky 2022) ................................................................................23

*Faris v. TSA,*
    No. 21-1221 (D.C. Cir. 2021) ..................................................................................13

*Faris v. TSA,*
    No. 21-3951 (6th Cir. 2021) ....................................................................................12

*Fisher v. Goord,*
    981 F. Supp. 140 (W.D.N.Y. 1997) ..........................................................................8

*Florida v. Becerra,*
    544 F. Supp. 3d 1241 (M.D. Fla. 2021) ...................................................................17

*Florida v. Walensky,*
    No. 22-cv-0718 (M.D. Fla. 2022) .............................................................................23

*Fowler v. Benson,*
    924 F.3d 247 (6th Cir. 2019) .....................................................................................6

*FW/PBS, Inc. v. Dallas,*
    493 U.S. 215 (1990) ...................................................................................................8

*Gaines v. NCAA,*
    746 F. Supp. 738 (M.D. Tenn. 1990) ....................................................................6, 7

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ............................................................................................22

*Gun Owners of Am., Inc. v. Garland,*
    992 F.3d 446 (6th Cir. 2021), *reh'g en banc granted, vacated on other grounds,*
    19 F.4th 890 (6th Cir. 2021) ...................................................................................23

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
    530 U.S. 1 (2004) .....................................................................................................19

*Health Freedom Defense Fund v. Biden,*
    No. 21-cv-1693 (M.D. Fla. 2021) .............................................................................23

*Huron Mtn. Club v. U.S. Army Corps of Eng'rs,*
    545 F. App'x 390 (6th Cir. 2013) .............................................................................11

*J. W. Hampton, Jr., & Co. v. United States,*
    276 U.S. 394 (1928) ...........................................................................................10, 20

*L.T. v. Zucker,*
    No. 21-1034, 2021 WL 4775215 (N.D.N.Y. Oct. 13, 2021) ....................................22

*Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*,
  No. 05-5931, 2006 WL 8456316 (E.D. La. Mar. 22, 2006) ...................................................10

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004) ............................................................................................................19

*Lichter v. United States*,
  334 U.S. 742 (1948) ............................................................................................................20

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ........................................................................................................ 2, 22

*Mahwikizi v. CDC*,
  No. 21-cv-3467, 2022 WL 602452 (N.D. Ill. Mar. 1, 2022) ................................................23

*Marcus v. TSA*,
  No. 21-1225 (D.C. Cir. 2021) ..............................................................................................13

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ..............................................................................................................6

*McNeilly v. Land*,
  684 F3d 611, (6th Cir. 2012) ................................................................................................9

*Miranda ex rel. M.M. v. Alexander*,
  No. 21-cv-0535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021) ...........................................22

*Mistretta v. United States*,
  488 U.S. 361 (1989) ........................................................................................................ 20, 21

*Nat'l Broad. Co. v. United States*,
  319 U.S. 190 (1943) ............................................................................................................20

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ............................................................................................................15

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*,
  305 F.3d 566 (6th Cir. 2002) ............................................................................................ 6, 10

*Panama Refin. Co. v. Ryan*,
  293 U.S. 388 (1935) ............................................................................................................20

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
  872 F.2d 75 (4th Cir. 1989) ................................................................................................11

*RGIS LLC v. A.S.T. Inc.*,
  No. 07-10975, 2008 WL 878908 (E.D. Mich. Mar. 28, 2008) ..............................................8

*Seklecki v. CDC,*
   No. 22-cv-10155 (D. Mass. 2022) ..............................................................23

*State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n,*
   812 F.2d 288 (6th Cir. 1987) .......................................................................6

*Taniguchi v. Kan Pac. Saipan, Ltd.,*
   566 U.S. 560 (2012) ............................................................................ 14, 15

*Tiger Lily, LLC v. Dep't of Housing & Urban Dev.,*
   499 F. Supp. 3d 538 (W.D. Tenn. 2020) ................................................. 9, 10

*Tiger Lily, LLC v. HUD,*
   5 F.4th 666(6th Cir. 2021)…………………………………………………………..16, 17

*Trocano v. CDC,*
   No. 22-cv-0727 (D. Colo. 2022) ................................................................23

*Trump v. Hawaii,*
   138 S. Ct. 2392 (2018)...............................................................................22

*United States v. Mecham,*
   950 F.3d 257 (5th Cir. 2020) .....................................................................21

*Util. Air Regulatory Grp. v. EPA,*
   573 U.S. 302 (2014)...................................................................................18

*Van Duyne v. CDC,*
   No. 22-cv-0122 (N.D. Tex. 2022).............................................................23

*Vita-Mix Corp. v. Tristar Prod., Inc.,*
   No. 1:07-cv-275, 2008 WL 11383504 (N.D. Ohio Sept. 30, 2008) .....................11

*Wall v. CDC,*
   No. 21-cv-975 (M.D. Fla. 2021) ......................................................... 12, 23

*Wall v. CDC,*
   No. 21-12179 (11th Cir. 2021), *reconsideration denied,* (11th Cir. 2021) ...............12

*Wall v. CDC,*
   No. 21-90017 (11th Cir. 2021) ..................................................................12

*Wall v. CDC,*
   No. 21A2 (S. Ct. 2021) ..............................................................................12

*Wall v. Southwest Airlines,*
   No. 6:21-cv-1008 (M.D. Fla. 2021)...................................................... 12, 22

*Wall v. TSA,*
No. 21-1220 (D.C. Cir. 2021) ...................................................................13

*Wall v. TSA,*
No. 21A198 (S. Ct. 2021) https://perma.cc/E7UD-HMBM ...........................13

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982) ...........................................................................7

*Wells Fargo & Co. v. WhenU.com, Inc.,*
293 F. Supp. 2d 734 (E.D. Mich. 2003) ...................................................11

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001) ......................................................................20, 21

*Yakus v. United States,*
321 U.S. 414 (1944) ...........................................................................20

**Statutes**

5 U.S.C. § 804(2) ....................................................................................18

42 U.S.C. § 264(a) ..............................................................................*passim*

*Department of Education Organization Act,*
Pub. L. No. 96-88, 93 Stat. 668 (1979), (codified at 20 U.S.C. § 3508(b)) ...........2

*Public Health Service Act,*
Pub. L. No. 78-410, 58 Stat. 703 (1944), (codified at 42 U.S.C. § 264(a)) ...........1

**Legislative Materials**

*Consolidation & Revision of Laws Relating to the Public Health Service,*
H.R. Rep. No. 1364, 78th Cong. 2d Sess. (1944)............................................2

**Administrative and Executive Materials**

14 C.F.R. § 91.1 ....................................................................................17

14 C.F.R. § 139.1 ..................................................................................17

42 C.F.R. pt. 70 .....................................................................................3

42 C.F.R. § 70.2 .....................................................................................3

42 C.F.R. § 71.1(a) ................................................................................19

42 C.F.R. § 71.31(b) ...........................................................................3-4, 19

42 C.F.R. § 71.32(b) ...........................................................................3, 19

CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs,*
86 Fed. Reg. 8025 (Feb. 3, 2021)......................................................................................4, 5, 18, 19

CDC, *Requirements for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country,*
86 Fed. Reg. 69,256 (Dec. 7, 2021) ............................................................................................4

*Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations,*
65 Fed. Reg. 49,906 (Aug. 16, 2000)............................................................................................3

Executive Order 13295, *Revised List of Quarantinable Communicable Diseases* (Apr. 4, 2003),
https://perma.cc/Z5RS-HJMG......................................................................................................19

*Reorganization Plan No. 3 of 1966,*
31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966) .......................................................2

## Other Authorities

CDC, COVID Data Tracker,
https://perma.cc/GJ8W-TUMR (updated Apr. 7, 2022) .............................................. 4, 21

CDC, Find Free Masks (N95 Respirators),
https://perma.cc/Q4Q9-QBMK ..................................................................................................7

CDC, *How COVID 19 Spreads* (updated July 14, 2021),
https://perma.cc/R38B-WAPL......................................................................................................4

CDC, NIOSH Science Blog, Respiratory Protection vs. Source Control—What's the difference?,
https://perma.cc/QV87-M7KZ (Sept. 8, 2020) .....................................................................18

CDC, *Quarantine and Isolation,*
https://perma.cc/6V9S-6ZG8 (last reviewed Feb. 25, 2022) ..............................................8

CDC, WASH, Sanitation & Hygiene,
https://perma.cc/CMX8-3X3B (last reviewed Dec. 2, 2021)...........................................15

Charles Alan Wright & Arthur R. Miller,
11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) .....................................................................11

District of Columbia, Mayor's Order 2020-080: *Wearing of Masks in the District of Columbia to Prevent the Spread of COVID-19* (July 22, 2020),
https://perma.cc/4DM8-KVN5 ..................................................................................................9

HHS, *Strategic National Stockpile Makes High-quality Masks Available to Americans,*
https://perma.cc/KL66-R4F2 .......................................................................................................7

Mayo Clinic, *Coronavirus disease 2019 (COVID-19)*,
    https://perma.cc/4SRU-EZBN ...........................................................................19

Premium Single Use Disposable Face Mask, Soft on Skin, Pack of 3-Ply Masks Facial Cover with
    Elastic Earloops Great For Home, Office, School, and Outdoors (50 Masks),
    https://perma.cc/3HCS-Y9L6 ............................................................................7

State of Kentucky, Exec. Order No. 2020-996, *State of Emergency* (Dec. 3, 2020),
    https://perma.cc/52VK-VT3Q ............................................................................9

*Sanitary*, Merriam-Webster.com Dictionary,
    https://perma.cc/ET57-55XX ...........................................................................15

*Sanitation*, Merriam-Webster.com Dictionary,
    https://perma.cc/9ARR-YKYH ..........................................................................14

TSA, *Coronavirus (COVID-19) FAQ* (accessed Mar. 30, 2022),
    https://perma.cc/2U5N-JR68 ............................................................................8

YaleMedicine.org, *Why Doctors Wear Masks* (Sept. 1, 2020),
    https://perma.cc/TE77-8PBH.............................................................................5

# INTRODUCTION

Congress authorized the Secretary of Health and Human Services, through the Centers for Disease Control and Prevention (CDC), to adopt "such regulations as in [the agency's] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions [of the United States], or from one State or possession into any other State or possession." Public Health Service Act, Pub. L. No. 78-410, § 361(a), 58 Stat. 703 (1944) (codified at 42 U.S.C. § 264(a)). In particular, Congress authorized "sanitation" measures, as well as all "other measures" that are akin to such measures. *Id.* Invoking that authority, CDC issued a temporary order that (with some exceptions) requires individuals to wear masks on public conveyances, including airplanes. The order was issued to reduce the spread of COVID-19—"one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." *Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021).

Plaintiffs are seventeen members of Congress who claim that (1) CDC's order exceeds the agency's statutory and regulatory authority; and (2) if it does not, then the relevant provision of the Public Health Service Act, 42 U.S.C. § 264(a), violates the nondelegation doctrine.

Both claims are meritless. CDC has authority to "prevent the introduction, transmission, or spread of communicable diseases," including by employing "sanitation" measures. 42 U.S.C. § 264(a). Masking is a conventional sanitation measure, as the dictionary definitions cited by both Plaintiffs and Defendants make clear. As for Plaintiffs' nondelegation claim, it fails because the Supreme Court has construed the statute as providing intelligible principles for its application that are more specific than many that have previously passed muster.

Although the merits are straightforward, there is no need for the Court to reach them at this stage. That is because Plaintiffs have not carried their burden of proving the irreparable harm needed to justify a preliminary injunction. Plaintiffs allege that they are required to purchase masks to comply with the order. But the relatively miniscule cost of a mask does not approach the degree of harm necessary for extraordinary relief. Moreover, Plaintiffs claim to be frequent travelers who have routinely complied with the transportation mask order in the past, so they presumably already have

1

masks, and do not contend otherwise. Regardless, there is no need for them to buy masks because free masks are abundantly available. And the fact that Plaintiffs complied with the transportation mask order for over a year before suing undercuts their purported need for emergency relief. Moreover, the relief Plaintiffs seek would come at the expense of other travelers, including children too young to be vaccinated, those who have not been vaccinated for medical reasons, and the elderly or immunocompromised. Plaintiffs' desire not to purchase masks does not outweigh the countervailing interests of others, or the public interest more generally. Accordingly, the motion for a preliminary injunction should be denied.

Even if there were any basis to issue an injunction, at a minimum, relief should be limited to Plaintiffs Thomas Massie and Rand Paul. They alone have even attempted to provide evidence of harm. As the Supreme Court has made clear, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).

## BACKGROUND

### A.    Statutory and Regulatory Background

Congress enacted the Public Health Service Act in 1944. *Consolidation & Revision of Laws Relating to the Public Health Service*, H.R. Rep. No. 1364, 78th Cong. 2d Sess., at 1 (1944). The resulting statute, 42 U.S.C. § 264—part of a broader statutory scheme authorizing the Department of Health and Human Services (HHS) to take wide-ranging public-health actions, *see id.* §§ 264–272—authorizes the Secretary of Health and Human Services[1] "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other state or possession." *Id.* § 264(a). The second sentence of § 264(a) further clarifies that "[f]or purposes

---

[1]    Although the statute assigns authority to the Surgeon General, all statutory powers and functions of the Surgeon General were transferred to the Secretary in 1966, 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966); *see also* Pub. L. No. 96-88, § 509(b), 93 Stat. 668, 695 (1979) (codified at 20 U.S.C. § 3508(b)). The Secretary has retained these authorities despite the reestablishment of the Office of the Surgeon General in 1987.

of carrying out and enforcing such regulations," the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.*

Subsection (b) imposes specific limits on the Secretary's ability to "provide for the apprehension, detention, or conditional release of individuals"—a power not specifically identified in subsection (a)—permitting such impositions on a person's physical movement only for diseases specified by Executive Order. *Id.* § 264(b). Subsections (c) and (d) set further limits on the detention of individuals. *See id.* § 264(c)–(d). The final subsection provides that the statute and any regulation adopted thereunder supersede state law "to the extent that such a provision conflicts with an exercise of Federal authority." *Id.* § 264(e).

The Secretary has promulgated regulations implementing these provisions and delegating their enforcement to CDC. *See* 42 C.F.R. pt. 70; *Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations*, 65 Fed. Reg. 49,906, 49,907 (Aug. 16, 2000). A regulation now codified at 42 C.F.R. § 70.2 provides CDC with broad discretion to address the uncontrolled spread of communicable disease. Specifically, if the Director of CDC "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases" between or among states, she is empowered to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary." 42 C.F.R. § 70.2. These measures include, but are not limited to, "inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.* In addition, separate longstanding regulations provide that "[w]henever the Director has reason to believe that any arriving carrier . . . is or may be infected . . . with a communicable disease, he/she may require detention, disinfection, . . . or other related measures respecting the carrier or article or thing as he/she considers necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 C.F.R. § 71.32(b); *see also id.*

3

§ 71.31(b) (allowing "detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease").

### B.      The COVID-19 Pandemic

The respiratory disease COVID-19 is caused by the novel coronavirus SARS-CoV-2. *See* CDC, *Requirements for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed. Reg. 69,256, 69,258 (Dec. 7, 2021). COVID-19 poses a risk of "severe" respiratory illness, meaning that infected persons may require hospitalization, intensive care, or use of a ventilator. *Id.* at 69,259. Severe cases may be fatal. *Id.* The virus that causes COVID-19 spreads in several ways, including when an individual "[b]reath[es] in air when close to an infected person." CDC, *How COVID 19 Spreads* (updated July 14, 2021), https://perma.cc/R38B-WAPL. Persons not displaying symptoms are capable of transmitting the virus. 86 Fed. Reg. at 69,258. As of this filing, COVID-19 has infected more than 80 million and killed more than 981,000 people in the United States alone, and many more around the world. *See* CDC, COVID Data Tracker, https://perma.cc/GJ8W-TUMR (updated Apr. 7, 2022).

### C.      The Challenged Order

The CDC issued the transportation mask order on February 3, 2021. CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).[2] Generally, the order requires persons to "wear masks over the mouth and nose when traveling on any conveyance . . . into or within the United States" and "at transportation hubs." *Id.* at 8026. The scientific justifications are straightforward: "Masks help prevent people who have COVID-19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others[.]" *Id.* at 8028. They "also provide personal

---

[2]      The Transportation Security Administration (TSA) has also issued a series of Security Directives, through which TSA assists with the enforcement of the CDC's mask order. *See generally Corbett v. TSA*, 19 F.4th 478 (D.C. Cir. 2021) (holding that TSA Security Directives requiring masks in public-transportation systems are lawful). TSA is not a party to this case, and those directives are not at issue.

protection to the wearer by reducing inhalation of" "virus-laden droplets." *Id.* "The community benefit of wearing masks . . . is due to the combination of these effects; individual prevention benefit increases with increasing numbers of people using masks consistently and correctly." *Id.* Indeed, masks' effectiveness a preventing the spread of disease is why "doctors have been wearing medical-grade N95 or surgical masks . . . during surgeries or patient interactions as part of their daily routines, for many decades." YaleMedicine.org, *Why Doctors Wear Masks* (Sept. 1, 2020), https://perma.cc/TE77-8PBH.

The order also explains why mask-wearing is especially important on public conveyances: "[t]raveling on multi-person conveyances increases a person's risk of getting and spreading COVID-19 by bringing persons in close contact with others, often for prolonged periods[.]" 86 Fed. Reg. at 8029. "Furthermore, given how interconnected most transportation systems are across the nation and the world, local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask and with others who are not wearing masks." *Id.* And in the context of commercial air travel in particular, "[s]ocial distancing may be difficult if not impossible[.]" *Id.*

The order exempts "child[ren] under the age of 2," and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027. It also exempts (among other things) "[p]rivate conveyances operated solely for personal, non-commercial use." *Id.* at 8028. And it does not apply "[w]hile eating, drinking, or taking medication, for brief periods." *Id.* at 8027.[3]

### D.    This Lawsuit

Plaintiffs—seventeen members of Congress—filed this lawsuit on March 14, 2022, naming as defendants CDC and two of its senior officials. Compl., ECF No. 1. They claim that (1) CDC's transportation mask order exceeds the agency's statutory authority under the Public Health Service Act and regulations promulgated thereunder, *id.* ¶¶ 18–26, and (2) if the order does not violate the

---

[3]    On March 10, 2022, CDC announced that, in advance of April 18, 2022, it will work with government agencies to inform a revised policy framework for when, and under what circumstances, masks should be required in the public transportation corridor.

Act, then the Act violates the nondelegation doctrine, *id.* ¶¶ 27–32. On March 23, 2022, Plaintiffs moved for a preliminary injunction. ECF No. 18 ("Pls.' Br.").

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (citations omitted). The party moving for a preliminary injunction has the burden of proof, *see Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002), and that burden must be met "by a clear showing," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and emphasis omitted). In determining whether to issue a preliminary injunction, courts consider four factors: "(1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019). Where the federal government is the defendant, the last two factors merge. *See Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020). The Sixth Circuit has cautioned against the entry of mandatory preliminary injunctions that alter (rather than maintain) the status quo, and "which would finally dispose of the case on its merits." *Dunn v. Retail Clerks Int'l Ass'n, AFL-CIO, Loc. 1529*, 299 F.2d 873, 874 (6th Cir. 1962); *see also Gaines v. NCAA*, 746 F. Supp. 738, 742 (M.D. Tenn. 1990) (party "requesting mandatory relief which would change the status quo . . . bears an especially heavy burden in convincing the Court that an injunction is appropriate").

## ARGUMENT

### I.   Plaintiffs have not shown irreparable harm.

For Plaintiffs to obtain a preliminary injunction, "the existence of an irreparable injury is mandatory[,]" and "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *D.T.*, 942 F.3d at 326–27 (citation omitted). "[T]he harm alleged must be both certain and great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). And because they seek an injunction that would alter the status quo, Plaintiffs bear an "especially heavy burden in convincing the Court that an injunction

is appropriate." *Gaines*, 746 F. Supp. At 742. Plaintiffs contend that they need a preliminary injunction to abate two forms of purported injury: (1) the cost of masks for air travel and (2) the alleged ongoing deprivation of a constitutional right against Congress delegating legislative powers to administrative agencies. Neither of these constitutes irreparable harm. Further, Plaintiffs' purported need for immediate relief is undermined by their own extreme delay of over a year in requesting such relief.

      1.      Citing no evidence, Plaintiffs first insist that the transportation mask order causes them irreparable harm because, each time they fly, they "must use a mask that was purchased at [their] own expense." Pls.' Br. at 14. As an initial matter, the cost of a mask is exceedingly low—surgical masks are sold for pennies apiece. *See, e.g.*, Premium Single Use Disposable Face Mask, Soft on Skin, Pack of 3-Ply Masks Facial Cover with Elastic Earloops Great For Home, Office, School, and Outdoors (50 Masks), https://perma.cc/3HCS-Y9L6 (selling 50 surgical masks for $5.85—or $0.12 each). Because "an injunction is an equitable remedy[,]" one should not issue "'to restrain an act the injurious consequences of which are merely trifling.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982) (quoting *Consol. Canal Co. v. Mesa Canal Co.*, 177 U.S. 296, 302 (1900)). The cost of a mask does not rise above that level.

      In any event, it is clear that Plaintiffs do not need to need to purchase masks to fly. There are many cost-free options for Plaintiffs to obtain masks and avoid entirely the irreparable harm they insist warrants emergency action by the Court. As one possibility, there are dozens upon dozens of conveniently located pharmacies ready to provide Plaintiffs a quality mask at no cost. A search using CDC's "Find Free Masks" tool (https://perma.cc/Q4Q9-QBMK) reveals at least fifty pharmacies offering (as part of an HHS program) free N95 respirators within five miles of the zip code for Reagan National Airport near Washington, D.C., where all Plaintiffs serve as members of Congress, and eleven such pharmacies within five miles of the zip code for the Louisville Muhammad Ali International Airport. *See* HHS, *Strategic National Stockpile Makes High-quality Masks Available to Americans*, https://perma.cc/KL66-R4F2 (announcing that free N95 masks "will be made available at thousands of retail pharmacies and community health centers nationwide"). Plaintiffs are also free to take a no-cost, do-it-yourself approach. The transportation mask order permits the use of "homemade" masks

consisting of two layers of fabric. CDC, *Quarantine and Isolation*, https://perma.cc/6V9S-6ZG8 (last reviewed Feb. 25, 2022). Finally, if Plaintiffs fail to take the opportunity to obtain or craft a no-cost mask prior to arriving at the airport, a mask may be offered to them at no-cost by TSA when they arrive at the security checkpoint without one. TSA, *Coronavirus (COVID-19) FAQ* (accessed Mar. 30, 2022), https://perma.cc/2U5N-JR68.

Further, it would appear that Plaintiffs already own masks. Plaintiffs claim to be frequent travelers who have routinely complied with the transportation mask order in the past, so they presumably already have masks, and do not contend otherwise.  *See, e.g.*, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (fact necessary to support standing "must affirmatively appear in the record" and "cannot be 'inferred argumentatively from averments in the pleadings'" (citations omitted)). Thus, they fail to establish irreparable harm, because a preliminary injunction cannot provide relief for mask purchases that have already been completed. *See RGIS LLC AST Inc.*, No. 07-10975, 2008 WL 878908, at *2 (E.D. Mich. Mar. 28, 2008) ("It is well settled that 'a preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent future irreparable harm.'" (quoting *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997))); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, (1983) (to have standing, a plaintiff seeking injunctive relief must show s "real or immediate threat that the plaintiff will be wronged again").

Even if past mask purchases could be remedied with a preliminary injunction (which they cannot), Plaintiffs could not show that it was the transportation mask order that caused them to purchase masks. Over the past two years, masks have become a household staple. Under mandatory mask orders put in place in many parts of the country—including Washington, D.C., where Plaintiffs serve in Congress, and Kentucky, where the only two Plaintiffs to have provided sworn statements[4] live—a mask has at some point been necessary to enter most public indoor (and many outdoor) areas.

---

[4]     Plaintiff Rand Paul submitted a declaration in support of the motion for a preliminary injunction, ECF No. 18-2, and Plaintiff Thomas Massie has verified the complaint, but professes personal knowledge only about those allegations "as to [him]self," ECF No. 1 at 11. No other plaintiff has verified the complaint or submitted a sworn statement demonstrating irreparable harm.

*See* State of Kentucky, Exec. Order No. 2020-996, *State of Emergency* (Dec. 3, 2020), https://perma.cc/52VK-VT3Q; District of Columbia, Mayor's Order 2020-080: *Wearing of Masks in the District of Columbia to Prevent the Spread of COVID-19* (July 22, 2020), https://perma.cc/4DM8-KVN5. Both of these mandatory mask orders predate CDC's transportation mask order, and Plaintiffs have made no effort to show that their past mask purchases were specifically caused by the transportation mask order, as opposed to other preexisting mask requirements.

In sum, even if the cost of a mask rose above a trifle—and it does not—Plaintiffs cannot deny that free masks are abundantly available to them from multiple sources. In addition, Plaintiffs have failed to show that they do not already own a mask that they can use for air travel. Nor have they shown that their preowned masks were purchased in order to comply with the transportation mask order, though it would not matter even if they had because injunctions are not remedies for past harm. For these reasons, Plaintiffs cannot show irreparable harm stemming from the cost of a mask.

2.      Plaintiffs next argue that they must be deemed to suffer per se irreparable harm because they have alleged a violation of the constitution in their nondelegation claim. Pls.' Br. at 15. But while some deprivations of individual constitutional liberties—particularly the chilling effect of being denied Free Speech rights, *Elrod v. Burns*, 427 U.S. 347, 373 (1976)—constitute irreparable harm, the rule that Plaintiffs invoke "is not so categorical." *Bauman v. Twp. of Tittabawassee*, No. 14-cv-12841, 2014 WL 5499285, at *4 (E.D. Mich. Oct. 30, 2014). Many "alleged constitutional claims are insufficient to trigger a finding of irreparable harm." *Tiger Lily, LLC v. Dep't of Housing & Urban Dev.*, 499 F. Supp. 3d 538, 550–51 (W.D. Tenn. 2020). The Supreme Court and the Sixth Circuit appear to have recognized irreparable harm only where the alleged constitutional violation involves a loss of First Amendment freedoms or of Equal Protection. *Id.* (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *McNeilly v. Land*, 684 F3d 611, (6th Cir. 2012)). Indeed, while Plaintiffs cite several cases noting the importance of the Constitution's structural provisions, they cite no authority for the proposition that a violation of nondelegation principles establishes irreparable harm. To the contrary, courts have refused to find irreparable harm from the assertion of similar claims. *See Tiger Lily*, 499 F. Supp. 3d at 544 (no irreparable harm from claims alleging violations of Tenth Amendment, anti-commandeering

doctrine, and principles of federalism); *see also id.* (collecting cases concluding that there is no irreparable harm from constitutional claims alleging violations of the Supremacy Clause and the Commerce Clause). That is because the conclusion that "the nature of certain constitutional violations, such as violations of the freedoms of speech and privacy, is such that they necessarily cause irreparable harm does not . . . establish that *any* alleged constitutional violation does so." *Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. 05-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006); *see also Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1225 (11th Cir. 2021) (the "notion that the 'violation of constitutional rights always constitutes irreparable harm'" "finds no support in our precedents"; on the contrary, "we [have] identified only two categories of constitutional claims that presumably cause irreparable injuries—certain First Amendment and right-of-privacy claims"), *vacated as moot*, 20 F.4th 1385 (11th Cir. 2021) (citation omitted). The Court should reject Plaintiffs' contention that their mere invocation of the nondelegation doctrine unburdens them of the important requirement that they demonstrate irreparable harm to obtain an injunction.

In any event, even if a nondelegation claim could by itself establish irreparable harm, it would not here because the claim lacks merit. "[I]f a court finds it unlikely that a plaintiff will succeed on the merits of a constitutional claim, the 'argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit.'" *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016) (quoting *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). As discussed further below, Plaintiffs' nondelegation claim is easily rejected. To conclude that 42 U.S.C. § 264(a) amounts to an unconstitutional delegation, the Court would have to determine that it lacks any "intelligible principle" to which the agency "is directed to conform[.]" *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). But the Supreme Court has already effectively rejected that notion, explaining that § 264(a) "informs the grant of authority by illustrating the kinds of measures that could be necessary." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021) ("*AAR*").

3.       Plaintiffs' long delay in bringing suit also undermines their claim of irreparable harm. "[A] party requesting a preliminary injunction must generally show reasonable diligence" in order to

substantiate its asserted need for emergency relief. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). "An unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm." *Huron Mtn. Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 397 (6th Cir. 2013) (citation omitted). After all, "[s]ince an application for preliminary injunction is based upon an urgent need for the protection of a Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (citation omitted); *accord* Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

Plaintiffs in this case waited over a year from the issuance of the order in January 2021 to seek injunctive relief. Courts in this circuit have concluded that comparable and even shorter delays undermine a claim of irreparable harm. *See, e.g., DetailXPerts Franchise Sys. LLC v. Deck Inc.*, No. 19-cv-10037, 2019 WL 5294354, at *3 (E.D. Mich. Oct. 18, 2019) (no irreparable harm where party seeking injunction "waited more than one year"); *Vita-Mix Corp. v. Tristar Prod., Inc.*, No. 1:07-cv-275, 2008 WL 11383504, at *8 (N.D. Ohio Sept. 30, 2008) ("Plaintiff's eleven-month delay in seeking the extraordinary remedy of injunctive relief undermines its belated assertion of irreparable harm"); *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771–72 (E.D. Mich. 2003) (nine-month delay undermines allegation of irreparable harm). And there is no justification for Plaintiffs' delay. They admit that, as members of Congress who "frequently travel via commercial airlines[,]" they have often been subject to the transportation mask order during the time it has been in place. Compl. ¶ 15; *see also* Decl. of Rand Paul ¶ 4, ECF No. 18-2 (declaring that he has "frequently traveled" on commercial airlines since the date of the transportation mask order and has been "required to wear a mask while traveling through airports throughout the United States and on each commercial flight"). Yet, after over a year of frequent compliance with the order, Plaintiffs now suddenly argue that it is causing them such irreparable harm that it requires the extraordinary remedy of a preliminary injunction. Their long delay sharply undermines that contention.

4.     Many other district courts and courts of appeals have rejected requests to preliminarily enjoin CDC's and the TSA's orders requiring masks during commercial air travel for failure to demonstrate irreparable harm. First, in *Wall v. CDC*, No. 21-cv-975 (M.D. Fla.), a plaintiff claiming that he could not comply with CDC's transportation mask order because of a disability was denied a temporary restraining order due to a lack of irreparable harm. That plaintiff then sought emergency relief from the Eleventh Circuit (twice), and then the Supreme Court—all of which was denied, without any noted dissent. That plaintiff's motion for a preliminary injunction was also denied because of the absence of irreparable harm.[5]

In another case in the Middle District of Florida, another individual recently requested a temporary restraining order premised on alleged irreparable harm purportedly caused by being unable to fly without a mask on an upcoming work-related flight. Again, that plaintiff (unlike this one) alleged that he could not wear a mask for medical reasons. The district court denied relief, in part due to the lack of irreparable harm. *See Wall, et al., v. Southwest Airlines*, No. 6:21-cv-1008, Order at 6–7, ECF No. 153 (M.D. Fla. Dec. 8, 2021).

In addition, last year, several individuals filed petitions for review challenging TSA's enforcement of the CDC mask order "in a coordinated effort to enjoin the Mask Directives." *Faris v. TSA*, No. 21-3951, Order at 1 n.1 (6th Cir. Nov. 9, 2021) (collecting citations). The petitioners all filed substantially similar emergency motions for stay or preliminary injunction. *See id.* The Fourth Circuit and the Eighth Circuit denied the motions, and then transferred the remaining proceedings to the D.C. Circuit, where the first-filed petition was pending.[6] The Second, Fifth, Sixth, and Eleventh

---

[5]     *Wall v. CDC*, No. 21-cv-975, Order, ECF No. 28 (M.D. Fla. June 15, 2021) (denying TRO motion for lack of irreparable harm); *Wall v. CDC*, No. 21-90017, Order (11th Cir. June 28, 2021) (denying emergency motion for permission to appeal); *Wall v. CDC*, No. 21-12179, Order (11th Cir. June 30, 2021) (dismissing appeal), *reconsideration denied*, *Wall v. CDC*, No. 21-12179, Order (11th Cir. June 30, 2021); *Wall v. CDC*, No. 21A2, Order (S. Ct. July 13, 2021) (denying application for injunctive relief presented to Justice Thomas); *Wall v. CDC*, No. 21-cv-975, ECF No. 255, Order at 5 (M.D. Fla. Mar. 4, 2022) (denying preliminary-injunction motion for lack of irreparable harm).

[6]     *See Andreadakis v. TSA*, No. 21-2173, Order (4th Cir. Nov. 17, 2021); *Eades v. TSA*, No. 21-3362, Judgment (8th Cir. Nov. 17, 2021).

Circuits granted no relief, and instead transferred the stay applications to the D.C. Circuit, which then denied all the rest.[7] All of those orders were unanimous. After the D.C. Circuit had denied relief, two of the petitioners submitted an emergency application to the Supreme Court, again requesting a stay of TSA's enforcement of the CDC's mask order. Chief Justice Roberts denied the application without comment, and without referring the matter to the full Court. *See Wall v. TSA*, No. 21A198, https://perma.cc/E7UD-HMBM. On December 21, 2021, petitioners refiled an identical request with Justice Gorsuch. *Id.* This time, the application was referred to the full Court—but a few days later it too was denied, without any noted dissent. *Id.* This Court should chart the same course.

**II.    Plaintiffs are unlikely to succeed on the merits.**

The Court may deny the motion for a preliminary injunction based on Plaintiffs' stark failure to demonstrate irreparable harm alone. *See D.T.*, 942 F.3d at 326–27. But Plaintiffs have also not established the other factors warranting a preliminary injunction, including that their claims are likely to succeed.

> **A.    The transportation mask order falls squarely within CDC's statutory and regulatory authority.**

1.    Congress authorized CDC to adopt "such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions [of the United States], or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). In doing so, CDC "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." *Id.* Whatever the outer bounds of this authority, it plainly includes "sanitation" measures, or "other measures" akin to "sanitation" measures. *Id.*

---

[7]    *See Abadi v. TSA*, No. 21-1258, Order (D.C. Cir. Dec. 22, 2021); *Faris v. TSA*, No. 21-1221, Order (D.C. Cir. Nov. 12, 2021); *Marcus v. TSA*, 21-1225, Order (D.C. Cir. Nov. 12, 2021); *Wall v. TSA*, Order, No. 21-1220 (D.C. Cir. Nov. 10, 2021).

Masking is a conventional "sanitation" measure because it reduces viral particles in the air. This is clear from the plain meaning of the word "sanitation" as evidenced by dictionaries from the 1940s, published around the time of the enactment of the Public Health Service Act. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) (consulting "dictionaries in use when Congress enacted" the relevant provision to ascertain a term's ordinary meaning). Those dictionaries define "sanitation" to encompass, among other things, "the removal or neutralization of elements injurious to health." Ex. 1, Funk & Wagnalls New Standard Dictionary of the English Language 2172 (Isaac K. Funk et al. eds., 1946). Another contemporaneous dictionary defines "sanitary" to include "measures or equipment for improving conditions that influence health," and measures "effective in preventing or checking, agencies injurious to health, esp[ecially] filth and infection." Ex. 2, Webster's New Int'l Dictionary of the English Language 2214 (William Allan Neilson et al., 2d ed. 1942). Masking "prevent[s] or check[s]" the airborne presence of disease-causing viral particles, which are clearly "injurious to health," and thereby "improv[es] conditions that influence health" on public conveyances and transportation hubs. It is therefore a sanitation measure that falls squarely within CDC's statutory authority to control and prevent the spread of disease. Even if masking did not fall squarely within the express authorization to employ "sanitation" measures, it is at least similar to sanitation (among other statutory examples) and is therefore authorized as an "other measure[]" that CDC may employ to control the spread of disease. 42 U.S.C. § 264(a).

Plaintiffs argue that masking is not "sanitation" because it does not involve the "cleaning or removal of sewage or trash." Pls.' Br. at 8. But not one of the dictionary definitions offered by either party imposes such a limitation. Plaintiffs provide one dictionary definition from the 2022 version of Meriam Webster—though dictionaries contemporaneous to the enactment of the statute are preferred, *Taniguchi*, 566 U.S. at 566—which defines "sanitation" as "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions (as by removal of sewage and trash)— often used attributively." *Sanitation*, Merriam-Webster.com Dictionary, https://perma.cc/9ARR-YKYH. Trash and sewage removal in that definition are offered as parenthetical examples, not limitations. Most critically, Plaintiffs omit the primary definition of "sanitation" offered by their cited

14

source: "the act or process of making sanitary," *id.*, with "sanitary," in turn, meaning "of or relating to health," *Sanitary*, Merriam-Webster.com Dictionary, https://perma.cc/ET57-55XX. Masking prevents disease and promotes health by keeping disease-causing viral particles out of the air. It therefore fits neatly under both definitions of Plaintiffs' cited dictionary source, particularly the definition that they neglect to mention.

Defendants' construction of "sanitation" is also consistent with common usage. Like other "sanitation" measures, such as wearing gloves or a gown, or disinfecting surfaces, wearing a mask is intended to reduce the transmission of viral particles. Indeed, the millions of Americans making frequent use of hand "sanitizer" over the past two years have used it precisely to rid their hands of the viral particles that cause COVID-19 (not sewage and trash).

Plaintiffs also attempt to draw on language from the website for CDC's Global Water, Sanitation, and Hygiene (WASH) program, Pls.' Br. at 8, which describes "[b]asic sanitation" in that context as "having access to facilities for the safe disposal of human waste (feces and urine), as well as having the ability to maintain hygienic conditions, through services such as garbage collection, industrial/hazardous waste management, and wastewater treatment and disposal." CDC, WASH, Sanitation & Hygiene, https://perma.cc/CMX8-3X3B (last reviewed Dec. 2, 2021). But CDC's characterization of "basic sanitation" in the specific context of a wastewater program in 2021 says nothing about Congress's intended meaning of the word in 1944 in the broader context of overall disease control and prevention. Instead, the Court should look to the term's plain meaning, *Taniguchi*, 566 U.S. at 566, which contemporaneous dictionaries show readily encompasses the measures put in place by the transportation mask order.

Even if the Court concludes that the "statute is ambiguous," on this point, the only remaining question is whether the "agency's construction is reasonable." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Here, for all the reasons above, it is. Section 264(a) authorizes "sanitation" measures, as well as "other measures" that are akin to "sanitation" measures, which includes masking. The transportation mask order falls comfortably within the statutory authority. So

15

the CDC's interpretation is at least reasonable, and thus entitled to deference. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

Plaintiffs acknowledge that CDC may prevent and control the spread of diseases through the exemplary measures listed in § 264(a) as well as "measures that are similar to the ones listed." Pls.' Br. at 4–5. Accordingly, most of Plaintiffs' arguments—about canons of construction and reining in supposedly limitless interpretations of agency authority—miss the mark. To sustain this order, the Court need not read the statute to give CDC "broad authority to take whatever measures it deems necessary," as Plaintiffs incorrectly describe Defendants' position. Pls.' Br. at 4 (citation omitted). Instead, the order may be upheld by reading the statute essentially as Plaintiffs do: to authorize the measures set forth in the statute and other similar measures. *Id.* at 4–5.

For that reason, the Supreme Court's decision in *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485 (2021)—concluding that the CDC's eviction moratorium exceeded its statutory authority— is no help to Plaintiffs. *See* Pls.' Br. at 4–5. *AAR* concluded that the second sentence of 42 U.S.C. § 264(a) at least "informs the grant of authority" in the first, "by illustrating the kinds of measures that could be necessary[.]" 141 S. Ct. at 2488. But again, that simply confirms that the statute at least authorizes "sanitation" measures, along with other "kinds of measures" like sanitation measures—as all parties seem to agree. *Id.*; *see also id.* (listed measures "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself"). And in contrast to the eviction moratorium, there is nothing indirect about the transportation mask order—a mask is literally a physical barrier that "directly" reduces transmission by "isolating" viral particles and preventing them from becoming airborne. *Id.*

Plaintiffs likewise find no support in *Tiger Lily, LLC v. HUD*, 5 F.4th 666, 671 (6th Cir. 2021). *See* Pls.' Br. at 6–7. That opinion is entirely consistent with Defendants' interpretation here. As an initial matter, the Supreme Court subsequently ruled on the same question in *AAR*, and, although it agreed with the Sixth Circuit that the CDC's eviction moratorium was likely unlawful, it did not adopt all of the same reasoning. In any event, as explained above, the mask order is a "sanitation" measure that falls squarely within the second sentence of 42 U.S.C. § 264(a), *see Tiger Lily*, 5 F.4th at 671 ("we

conclude that the first sentence of § 264(a) authorizes the Secretary to take action and the second dictates what actions he may take"), and the context here—a public-safety threat facing our nation's interstate-transportation system—bears little resemblance to the evictions and landlord-tenant relations that the Sixth Circuit described as traditional state-law matters, *see id.* (noting that the CDC's eviction moratorium "alters the federal-state framework by permitting federal encroachment" on the "traditional state power" over "landlord-tenant relations") (citation omitted). Plaintiffs argue that the transportation mask order somehow "alters the federal-state framework." Pls.' Br. at 9 (citation omitted). But they make no effort to identify any traditional state power that the order assumes. In fact, controlling the interstate spread of disease has been a federal function for nearly eight decades. *See* 42 U.S.C. § 264. And Plaintiffs cannot plausibly contend that airports and aircraft are areas of traditional state control. Federal regulations have long set rules and standards for the "operation of airports in any State of the United States," 14 C.F.R. § 139.1, and "each person on board an aircraft" operating in the United States, *id.* § 91.1.

Contrary to Plaintiffs' contention—and the conclusion of the district court in *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1270 (M.D. Fla. 2021)—§ 264(a) does not limit CDC to regulating only "an infected or infecting item." Pls.' Br. at 8–9. Basic rules of grammar show that the phrase "found to be so infected or contaminated" in the statute limits only the "animals or articles" that CDC may "destr[oy]." 42 U.S.C. § 264(a). That is because the limiting phrase follows that listed measure without punctuation and precedes the remainder of the list, namely "other measures." *Id.*; *see Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (describing the "rule of the last antecedent," under which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781–82 (2d Cir. 2013) (noting that, where a writer intends a modifier to apply to an entire list, that modifier generally comes at the end of that list and is separated by a comma). Notably, when the Supreme Court subsequently analyzed the same statutory language in *AAR*, it did not conclude that CDC is limited to regulating only "animals or articles found to be so infected or contaminated," even though that would have been dispositive there. *See AAR*, 141 S. Ct. at 2488. And Plaintiffs' reading leads to several implausible

results: *e.g.*, that CDC could order "inspection," but only of items already "found to be so infected." In any event, Plaintiffs are incorrect to suggest that the order "does not directly target the disease" because it applies to "individuals whether they are [known to be] infected or not." Pls.' Br. at 7. The virus that causes COVID-19 is transmitted by respiratory droplets produced when an infected person coughs, sneezes, or talks, and infected persons who are pre-symptomatic and asymptomatic can transmit the disease. 86 Fed. Reg. at 8028. And masks work not only as source control, but also as respiratory protection. *See, e.g.*, CDC, NIOSH Science Blog, Respiratory Protection vs. Source Control—What's the difference?, https://perma.cc/QV87-M7KZ (Sept. 8, 2020). Thus, requiring masks of all persons traveling on public conveyances and in transportation hubs is, "in [the CDC's] judgment, necessary to prevent the introduction, transmission, or spread" of COVID-19. 42 U.S.C. § 264(a).

Plaintiffs also invoke what they refer to as the "major questions doctrine." Pls.' Br. at 12–13. In *AAR*, the Supreme Court stated that courts "expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" 141 S. Ct. at 2489 (quoting *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014)). But Plaintiffs make no effort to show that the economic significant of the transportation mask order remotely approaches that of the eviction moratorium at issue in *AAR*—estimated at $50 billion. *Id.* Plaintiffs note that CDC described the order as "an economically significant regulatory" action for purposes of Executive Order 12,866, but they cite no authority that such a relatively commonplace designation automatically triggers the analysis undertaken in *AAR*, and the contention does not withstand scrutiny. If agencies were generally denied the authority to take actions with, for example, an economic effect of $100 million or more, as Plaintiff argues, Pls.' Br. at 13 (citing 5 U.S.C. § 804(2)), then the Congressional Review Act—which contemplates that agencies will indeed issue such rules, and gives Congress an opportunity to disapprove of them—would make little sense. And unlike a moratorium on evictions, which the Supreme Court held "relates to interstate infection" in an "indirect[]" way "markedly different from the direct targeting of disease that characterizes the measures identified in the statute[,]" *AAR*, 141 S. Ct. at 2488, mask wearing is a "sanitation" measure that directly impedes viral

18

transmission. Under such circumstances, "the sole function of the courts . . . is to enforce [the statute] according to its terms[,]" not to adopt narrowing constructions that frustrate Congress's intent. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2004)).

2.      Plaintiffs are also incorrect that the transportation mask order is contrary to CDC's regulations. As Plaintiffs note (Pls.' Br. at 10), 42 C.F.R. § 70.2, like 42 U.S.C. § 264(a), authorizes CDC to employ "sanitation" measures to prevent the interstate spread of disease—which permits the transportation mask order for the reasons set forth above. Plaintiffs note that the regulation contains the additional requirement that CDC determine that any State measures are insufficient to control the interstate spread of disease. Pls.' Br. at 10. But Plaintiffs do not—and cannot—dispute that CDC made precisely that determination here. CDC concluded that "[a]ny state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID-19 from such state or territory to any other state or territory." 86 Fed. Reg. at 8029. The order is therefore fully consistent with CDC's regulations.[8, 9]

---

[8]      Although no Plaintiff claims standing to challenge the order's application to international conveyances, in that context it is further authorized by 42 C.F.R. §§ 71.31(b) and 71.32(b). *See* 42 C.F.R. § 71.1(a) (noting that "[t]he provisions of this part [*i.e.*, Part 71 of Title 42] contain the regulations to prevent the . . . spread of communicable disease from foreign countries into the [United] States"). Those longstanding regulations provide that where "any arriving carrier . . . is or may be infected . . . with a communicable disease," CDC "may require detention, disinfection, . . . or other related measures" it "considers necessary to prevent the . . . spread of communicable diseases," *id.* § 71.32(b), and authorize CDC to "issue a controlled free pratique . . . stipulating what measures are to be met," *id.* § 71.31(b). Under these regulations, masking is permissible because it is "related" to measures like disinfection and fumigation; like those measures, masking reduces the presence of disease-causing virus particles in the aircraft.

[9]      Plaintiffs are incorrect that COVID-19 is not one of the communicable diseases covered by the current version of Executive Order 13295. Pls.' Br. at 11. That order was revised to add "severe acute respiratory syndromes" to the list of quarantinable communicable diseases in 2003, https://perma.cc/Z5RS-HJMG, and COVID-19 is such a syndrome. Indeed, the full name of the COVID-19 virus is SARS-CoV-2, which stands for "severe acute respiratory syndrome coronavirus 2." *See* Mayo Clinic, *Coronavirus disease 2019 (COVID-19)*, https://perma.cc/4SRU-EZBN.

**B.     The Public Health Services Act does not offend the nondelegation doctrine.**

Plaintiffs argue in the alternative that if the Public Health Service Act is read to authorize CDC to issue the transportation mask order, then that Act must be unconstitutional under the nondelegation doctrine. Pls.' Br. at 11–12. But so long as Congress provides "an intelligible principle to which" the agency "is directed to conform, such legislative action is not a forbidden delegation of legislative power[s]." *J. W. Hampton, Jr.*, 276 U.S. at 409. This is not a high bar. Indeed, though Congress has delegated authority since "the beginning of the government," the Supreme Court "has found only two delegations to be unconstitutional." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442, 446 (5th Cir. 2020) (citation omitted), *cert. denied*, 141 S. Ct. 2746 (2021). One "provided literally no guidance for the exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citing *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

By contrast, in the more than 80 years since those two decisions—both from 1935, and both about the same statute—the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta v. United States*, 488 U.S. 361, 373 (1989), and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *Am. Trucking*, 531 U.S. at 474-75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)). The Supreme Court has upheld statutes authorizing the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785-86 (1948); authorizing the Price Administrator to fix "fair and equitable" commodities prices, *Yakus v. United States*, 321 U.S. 414, 420 (1944); authorizing the FCC to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943); authorizing the Securities and Exchange Commission to ensure that a holding company's structure does not "unfairly or inequitably distribute voting power among security holders," *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104-05 (1946); directing the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes,

*Mistretta*, 488 U.S. at 374-77; and directing the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required to "protect the public health," *Am. Trucking*, 531 U.S. at 473 (citation omitted).

In light of these precedents, it is abundantly clear that the Public Health Service Act is not an unconstitutional delegation of legislative power. The grant of authority in the first sentence of 42 U.S.C. § 264(a)—to adopt measures that are "necessary to prevent the introduction, transmission, or spread of communicable diseases"—even standing alone, is a narrower and clearer principle than those upheld in many of the statutes discussed above. Moreover, any doubt is resolved by the second sentence, as interpreted in *AAR*, in which the Supreme Court explained that the scope of § 264(a) is "inform[ed]" by the list of six specifically authorized measures (*i.e.*, inspection, fumigation, disinfection, sanitation, pest extermination, and destruction), thereby providing an even clearer principle to which the agency must conform. 141 S. Ct. at 2488. These features of the statute make clear that it does not run afoul of the nondelegation doctrine.

Some have speculated that the Supreme Court "might well decide—perhaps soon—to reexamine or revive the nondelegation doctrine." *Big Time Vapes*, 963 F.3d at 447. But as the Fifth Circuit has warned in precisely this context, the lower federal courts "are not supposed to . . . read tea leaves to predict" where the law "might end up." *Id.* (quoting *United States v. Mecham*, 950 F.3d 257, 265 (5th Cir. 2020)). And under existing precedent, Plaintiffs' nondelegation claim must fail.

## III.   The public interest weighs against a preliminary injunction.

As of this filing, over 80 million cases and over 981,000 deaths caused by COVID-19 have been identified in the United States. *See* CDC, COVID Data Tracker, https://perma.cc/GJ8W-TUMR (updated Apr. 7, 2022). The need to protect crewmembers and the traveling public—including (but not limited to) children ineligible to be vaccinated, others unable to be vaccinated for religious or medical reasons, and the elderly or immunocompromised—plainly outweighs any alleged harm that Plaintiffs might suffer even if they had to spend a relative pittance on a mask for air travel rather than use a mask they already have or could easily obtain for free.

Instead, as another court recently recognized in litigation challenging this very order, "the public interest is actually best served by preventing the further spread of COVID-19 through mask enforcement." *Wall v. Southwest Airlines*, No. 6:21-cv-1008, Order at 9, ECF No. 153 (M.D. Fla. Dec. 8, 2021). And many other courts around the country have come to the same conclusion in the context of challenges to state and local mask rules. *See, e.g.*, *Miranda ex rel. M.M. v. Alexander*, No. 21-cv-0535, 2021 WL 4352328, at *6 (M.D. La. Sept. 24, 2021) ("[E]njoining the School Board's mask policy would potentially cause substantial harm to the Parish's students, teachers, and faculty through community spread of COVID-19, which could potentially cause serious illness and death to them as well as those with whom they come into contact."); *L.T. v. Zucker*, No. 21-1034, 2021 WL 4775215, at *11 (N.D.N.Y. Oct. 13, 2021) ("enjoining the mask mandate may imperil thousands of lives"). Plaintiffs offer no basis for a different conclusion here.

## IV.   Any relief would appropriately be limited to Plaintiff Paul and Massie.

An Article III court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1930, 1933 (2018). Accordingly, as required both by Article III of the Constitution and traditional principles of equity, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *id.* at 1934, and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen*, 512 U.S. at 765 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Nationwide injunctions, by contrast, "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). And the transportation mask order has been

challenged in numerous other pending cases,[10] underscoring why this Court should not attempt to decide its legality for all parties nationwide. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring) (lamenting the "gamesmanship and chaos" created by the possibility of "conflicting nationwide injunctions," as well as the "asymmetric" effects in which "the government's hope of implementing any new policy could face the long odds of a straight sweep, parlaying a 94-to-0 win in the district courts into a 12-to-0 victory in the courts of appeal"); *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 474 (6th Cir.) ("If we were to permit a universal injunction (also frequently called a 'nationwide injunction'), we would create an absurd situation in which the ATF must prevail in every single case brought against the Final Rule in order for its interpretation to prevail."), *reh'g en banc granted, vacated on other grounds*, 19 F.4th 890 (6th Cir. 2021).

Accordingly, though Plaintiffs' claims are meritless, at most, any relief should be limited to Plaintiffs Massie and Paul. *See* Compl. ¶ 5 (listing the residences of Plaintiffs). Those are the only two Plaintiffs who have even attempted to present evidence of irreparable harm stemming from the transportation mask order. *See* ECF No. 18-2 (declaration of Plaintiff Paul); ECF No. 1 at 11 (Plaintiff Massie verifying the complaint's allegations "as to [him]self"). Accordingly, even were this Court to provide preliminary injunctive relief, that relief should be limited to Plaintiffs Massie and Paul.

\* \* \*

---

[10] *See Wall v. CDC*, No. 21-cv-0975 (M.D. Fla.); *Faris v. CDC*, No. 22-cv-0023 (W.D. Ky.); *Seklecki v. CDC*, No. 22-cv-10155; (D. Mass.); *Andreadakis v. CDC*, No. 22-cv-0052 (E.D. Va.); *Health Freedom Defense Fund v. Biden*, No. 21-cv-1693 (M.D. Fla.); *Bobay-Somers v. HHS*, No. 21-cv-0335 (N.D. Ind.); *Chenge v. CDC*, No. 22-cv-0165 (W.D. Mich.); *Bigtree v. CDC*, No. 22-cv-0224 (W.D. Tex.); *Carlin v. CDC*, No. 22-cv-0800 (D.D.C.); *Family Research Council Action, Inc. v. Biden*, No. 22-cv-0209 (N.D. Tex.); *Van Duyne v. CDC*, No. 22-cv-0122 (N.D. Tex.); *Trocano v. CDC*, No. 22-cv-0727 (D. Colo.); *Florida v. Walensky*, No. 22-cv-0718 (M.D. Fla.); *Doe v. Dep't of Transp.*, No. 22-cv-0402 (W.D. Pa.); *see also Mahwikizi v. CDC*, No. 21-cv-3467, 2022 WL 602452 (N.D. Ill. Mar. 1, 2022) (granting CDC's motion to dismiss free-exercise and free-speech challenge). Several of these cases were filed by *pro se* litigants.

# CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied.

Dated: April 8, 2022                    Respectfully submitted,

                                        BRIAN M. BOYTON
                                        Principal Deputy Assistant Attorney General

                                        MICHAEL A BENNETT
                                        United States Attorney

                                        ERIC B. BECKENHAUER
                                        Assistant Branch Director

                                         /s/ Johnny Walker
                                        STEPHEN M PEZZI
                                        ANDREW F. FREIDAH
                                        JOHNNY H. WALKER
                                        MICHAEL J. GERARDI
                                        Trial Attorneys
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street NW
                                        Washington, D.C. 20530
                                        Tel.: (202) 514-3183 / Fax: (202) 616-8460
                                        Email: johnny.walker@usdoj.gov

                                        *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2022, I caused a true and correct copy of this filing to be

served on counsel of record by filing it with the Court's CM/ECF system.

   /s/Johnny Walker       
JOHNNY H. WALKER
Trial Attorney
United States Department of Justice