# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY (Bowling Green Division)

|  |  |
|---|---|
| HONORABLE THOMAS MASSIE, HONORABLE RAND PAUL, HONORABLE ANDY BIGGS, HONORABLE DAN BISHOP, HONORABLE LAUREN BOEBERT, HONORABLE ANDREW CLYDE, HONORABLE WARREN DAVIDSON, HONORABLE BOB GOOD, HONORABLE PAUL GOSAR, HONORABLE MARJORIE TAYLOR GREENE, HONORABLE BRIAN MAST, HONORABLE ALEX MOONEY, HONORABLE BARRY MOORE, HONORABLE RALPH NORMAN, HONORABLE BILL POSEY, HONORABLE MATT ROSENDALE, and HONORABLE CHIP ROY, | Civil Action No. 1:22-cv-00031-BJB |

                                                Plaintiffs,

              v.

CENTERS FOR DISEASE CONTROL AND
PREVENTION; ROCHELLE P. WALENSKY in
her official capacity as Director of Centers for
Disease Control and Prevention; and SHERRI A.
BERGER in her official capacity as Chief of Staff
of Centers for Disease Control and Prevention,

                                                Defendants.

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

ARGUMENT…………………………………………………………………………1

I.  The Members Have Shown Irreparable Harm Which is Continuing……………………1

   A.  Low cost, no cost, homemade, and previously purchased masks
   do not prevent a finding of irreparable harm……………………………………………..1

   B.  Loss of constitutional freedoms constitutes irreparable harm………………………...3

   C.  Timeline of litigation does not undermine irreparable harm…………………………3

II.  The Members Are Likely to Succeed on the Merits………………………………………6

   A.  The Mask Mandate is not a "sanitation" measure under 42 U.S.C. § 264……………6

   B.  CDC's interpretation is not reasonable and is not entitled to deference……………...9

   C.  Defendants' interpretation of 42 U.S.C. § 264(a) violates the
   non-delegation clause to the Constitution……………………………………...………12

III. The Public Interest is Always Served by Enjoining Unlawful
Statutes and Regulations………………………………………………………………13

IV. The Preliminary Injunction Should be Nationwide and Not
Limited to Members Paul and Massie……………………………………………………...14

CONCLUSION………………………………………………………………15

CERTIFICATE OF SERVICE………………………………………………..17

ii

## **TABLE OF AUTHORITIES**

**Cases**

*ADT, LLC v. Capital Connect, Inc.*,
  145 F. Supp. 3d 671 (N.D. Tex. 2015) ......................................................................... 3

*AHA v. Becerra*, 2021 U.S. LEXIS 3578,
  141 S. Ct. 2883, 210 L. Ed. 2d 990, 89 U.S.L.W. 3444, 2021 WL 2742784 ............ 9

*Ala. Ass'n of Realtors v. HHS*,
  141 S. Ct. 2485 (2021) ................................................................................... passim

*Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*,
  2021 U.S. Dist. LEXIS 85568, 2021 WL 1779282 (D.D.C. 2021) ......................... 10

*Andreadakis  v. TSA*,
  No. 21-2173 (4th Circuit) ...................................................................................... 6

*Asadi v. G.E. Energy United States,*
  *L.L.C.*, 720 F.3d 620 (2013) ................................................................................ 11

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018) ........................................................................................... 4

*BST Holdings, L.L.C. v. OSHA*,
  17 F.4th 604 (5th Cir., Nov. 12, 2021)……………………...............................3, 14

*Chambless Enters., LLC v. Redfield*,
  508 F. Supp. 3d 101 (W.D. La. 2020) .................................................................. 11

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,
  274 F.3d 377 (6th Cir. 2001) ................................................................................ 14

*DetailXPerts Franchise Sys. LLC v. Deck Inc.*,
  2019 U.S. Dist. LEXIS 180234 ............................................................................... 4

*Eades v. TSA*,
  No. 21-3362 (8th Circuit) ....................................................................................... 6

*Faris v Transp. Sec. Admin.*,
  2021 U.U. App. LEXIS 32446 ................................................................................ 6

*Florida v. Becerra*,
  544 F. Supp. 3d 1241 (M.D. Fla. 2021) ................................................................ 10

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ............................................................................................ 15

*Huron Mtn. Club v. U.S. Army Corps of Eng'rs*,
    545 F. App'x 390 (6th Cir. 2013) ............................................................................ 4

*Ind. State Police Pension, Tr. v. Chrysler LLC*,
    556 U.S. 960 (2009) ................................................................................................. 6

*Jones v. Caruso*,
    569 F.3d 258 (6th Cir. 2009) ................................................................................ 14

*Lamie v. United States Tr.*,
    540 U.S. 526 (2004) ............................................................................................... 12

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ................................................................................................. 9

*Qince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
    872 F.2d 74 (4th Cir., 1989) .................................................................................... 4

*Rhinehart v. Scutt*,
    509 Fed. Appx. 510 (6th Cir. 2013) ...................................................................... 14

*Roberts v. Neace*,
    958 F.3d 409 (6th Cir. 2020) ................................................................................ 14

*Sealed Appellee 1 v. Sealed Appellant 1*,
    767 F.3d 418, 2013 U.S. App. LEXIS 26127, 2013 WL 9541979 .......................... 7

*State v. Biden*,
    10 F.4th 538 (5th Cir. 2021) ................................................................................. 13

*Texas v. United States EPA*,
    829 F.3d 405 (5th Cir. July 15, 2016) ..................................................................... 1

*Texas v. United States EPA*,
    983 F.3d 826 (5th Cir. 2020) .................................................................................. 8

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ................................................................................ 15

*Tiger Lily, LLC v. United States HUD*,
    992 F.3d 518 (6th Cir. 2021) ........................................................................... 9, 11

*United States v. Barnes*,
    803 F.3d 209 (5th Cir. 2015) ................................................................................ 11

*Vita-Mix Corp. v. Tristar Prods.*,
   2008 U.S. Dist. LEXIS 143319 ........................................................................ 5

*Vitolo v. Guzman*,
   999 F.3d 353 (6th Cir. 2021) ........................................................................ 14

*Wall v. CDC*,
   2021 U.S. Dist. LEXIS 24297 ........................................................................ 5

*Wall v Southwest Airlines*,
   2021 U.S. Dist. LEXIS 221188 ........................................................................ 5

*Weinberg v. Romero-Barcelo*,
   456 U.S. 305 (1982) ........................................................................ 1

*Wells Fargo & Co. v. WhenU.com, Inc.*,
   293 F. Supp. 2d 734 (E.D. Mich. 2003) ........................................................................ 5

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ........................................................................ 13

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ........................................................................ 1

**Statutes**

42 U.S.C. § 264 ........................................................................ passim

**Other Authorities**

https://abcnews.go.com/Politics/congress-drops-mask-mandate-ahead-bidens-state-
   union/story?id=83161580 ........................................................................ 3

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html .... 2

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html .............. 2

https://www.cdc.gov/media/releases/2022/s0413-mask-order.html ................................................ 4

https://www.tsa.gov/news/press/statements/2022/04/13/tsa-extends-face-mask-requirement-
   through-may-3-2022 ........................................................................ 4

https://www.tsa.gov/sites/default/files/EA%201546-21-01D.pdf ................................................ 4

https://www.webmd.com/lung/news/20220115/cdc-updates-mask-guidelines-cloth-masks--least-
   effective ........................................................................ 2

Plaintiffs (hereinafter, "**Members**") hereby submit the following Reply in Support of Plaintiffs' Motion for a Preliminary Injunction.

## ARGUMENT

I. <u>**The Members Have Shown Irreparable Harm Which is Continuing**</u>

Despite Defendants' arguments to the contrary, the Members have suffered and will continue to suffer irreparable harm in the absence of a preliminary injunction.

### A. Low cost, no cost, homemade, and previously purchased masks do not prevent a finding of irreparable harm

Defendants' arguments that: (i) the costs of a mask is "exceedingly low" (Opp. at 7); (ii) there are "cost-free options for the Members to obtain masks" (*Id*.); (iii) the Members could theoretically assemble "homemade" masks (*Id*.); and (iv) the Members purportedly "already own masks" (Opp. at 8), do not negate the Members' adequate showing of irreparable harm.  When determining whether injury is irreparable, "it is not so much the magnitude but the irreparability that counts. . ." *Texas v. United States EPA*, 829 F.3d 405, 433-434 (5th Cir. July 15, 2016). Furthermore, *any* costs imposed on parties are irreparable where they cannot be recovered "in the ordinary course of litigation." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  The costs of masks are not recoverable in the ordinary course of litigation as the Members are barred by sovereign immunity from collecting money damages from the CDC.

Defendants provide no legal authority establishing that the existence of cheap or homemade masks categorically prevents a court from finding irreparable harm. Defendants' citation to *Weinberg v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982) is inapposite as *Weinberg* is factually distinguishable from the instant matter and does not discuss the confines of what is permitted to be considered "trifling." As the CDC has not communicated an expiration date for the Mask Mandate and, at the time of the drafting of this brief extended the Mandate once more, the

1

Members – seventeen elected officials who in good conscience reserve taxpayer-funded free masks for needy members of the public – will need to purchase many masks, as discussed below, in perpetuity pursuant to the Mask Mandate.[1] This is certainly an "injurious consequence" that is more than "trifling" and the Court should find irreparable harm.

The fact that the Members have purchased masks in the past does not prevent a finding of irreparable harm. "Surgical masks" (Opp. at 7), also known as disposable masks, are one-time use masks that become contaminated with each use,[2] no matter how long the duration, potentially requiring the use of several disposable masks during the course of one flight. Even if the Members were to obtain a completely ineffective cloth mask from TSA,[3] it is unlikely that the single mask will not become dirty and wet with required continuous use and not need replacement during the course of a flight.[4] Even cloth masks can be one-time use masks if sneezed or coughed into, or dropped, or touched by dirty hands while eating, and even if they withstand more than a single use, cloth masks do not last forever necessitating the Members to continually purchase disposable or cloth masks into perpetuity to comply with the Mask Mandate. Defendants' argument that the Members' past purchase of masks was to comply with other mask mandates is based on speculation

---

[1] Capitalized terms not defined herein have the same meaning as in the Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction.

[2] "Disposable masks should be thrown away after they're worn once." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last accessed April 12, 2022).

[3] "Loosely woven cloth products provide the least protection…" https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html (last accessed April 15, 2022); https://www.webmd.com/lung/news/20220115/cdc-updates-mask-guidelines-cloth-masks--least-effective (last visited April 15, 2022).

[4] "Disposable masks and respirators that become wet or dirty should be thrown away in the trash right away. Do **not** continue to wear a wet or dirty mask. Replace it with a dry, clean mask." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last accessed April 12, 2022).

and conjecture and is also unpersuasive for the reasons discussed above. Moreover, many mask mandates in Washington DC, Kentucky and elsewhere have been lifted, including in Congress,[5] so any future mask purchases will be solely for compliance with the Mask Mandate.

### B. Loss of constitutional freedoms constitutes irreparable harm

"The loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir., Nov. 12, 2021). "Complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." (*Id*. at 618). As discussed above, there are compliance costs associated with the Mask Mandate that are unrecoverable by the Members. In *BST Holdings*, the Court's holding supported the argument that mask requirement (in that case, as part of the "opt-out" provision related to a Covid-19 vaccine mandate) was not a minimal enough burden to remain in place. This supports a finding from this Court that the injurious consequence of wearing a mask under a regulation that will be held invalid for lack of authority rises above the level of a "trifle" for purposes of establishing irreparable harm.

### C. Timeline of litigation does not undermine irreparable harm

The timing within which the Members brought this action does not prevent this court from finding irreparable harm. *See ADT, LLC v. Capital Connect, Inc*., 145 F. Supp. 3d 671, 698 (N.D. Tex. 2015) (holding that the eight months ADT waited to bring its preliminary injunction motion did not preclude a finding of irreparable harm). Covid-19 related measures, including those put in place by the CDC, have been retreating steadily, giving the impression each day that the Mask

---

[5] As of February 27, 2022, "masks in the House chamber and elsewhere on the Capitol grounds are now optional after about two years of being required." https://abcnews.go.com/Politics/congress-drops-mask-mandate-ahead-bidens-state-union/story?id=83161580 (last accessed April 13, 2022).

Mandate may be lifted and would, by now, be a Covid-19 related measure of the past.

It took the CDC nearly a year into the Covid-19 pandemic to put the Mask Mandate in place. TSA's related security directives for mandatory masking related to the Mask Mandate always contain an expiration date within a few months, at most.[6] The Members were justified and reasonable in believing that the Mask Mandate would expire on the dates stated in the TSA security directives, but it is now apparent that the CDC plans to continue the Mask Mandate indefinitely,[7] resulting in continual extension of the TSA directives.  As such, the timing of this litigation and the preliminary injunction motion do not prevent a finding of irreparable harm.

The cases cited by Defendants to support their argument on this point are all distinguishable. In *Benisek v. Lamone*, 138 S. Ct. 1942 (2018), plaintiff brought claims of unconstitutional gerrymandering *six years* after the redistricting in question. *Huron Mtn. Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390 (6th Cir. 2013), similarly involved a wait of *six years* to file suit.  In *Qince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 74 (4th Cir., 1989) the court held that plaintiff's harm was caused by plaintiff's delay.  Here, the ongoing harm is caused by the Mask Mandate and its continued enforcement by Defendants.

*DetailXPerts Franchise Sys. LLC v. Deck Inc.*, 2019 U.S. Dist. LEXIS 180234, *1, cited by Defendants, which held there was no irreparable injury where plaintiff waited a year to file a preliminary injunction related to the parties' contractual non-compete clause is factually

---

[6] For example, a TSA Emergency Amendment regarding mask requirements, EA 1546-21-01D, set the expiration date for April 18, 2022, but these Emergency Amendments have been continually extended since TSA's first directive dated February 1, 2021 (available at https://www.tsa.gov/sites/default/files/EA%201546-21-01D.pdf (last accessed April 12, 2022)). It has since been extended until May 3, 2022 "[a]t CDC's recommendation." *See* https://www.tsa.gov/news/press/statements/2022/04/13/tsa-extends-face-mask-requirement-through-may-3-2022.

[7] *See* https://www.cdc.gov/media/releases/2022/s0413-mask-order.html (extending Mask Mandate through at least May 3, 2022) (last accessed April 12, 2022).

distinguishable from this matter as that case involved claims and defenses related to the breach of a non-compete clause that itself was temporally limited in a franchise agreement and thus is unpersuasive as far as the establishment of irreparable harm in this case, as there appears to be no end in sight to the Mask Mandate.  Similarly, *Vita-Mix Corp. v. Tristar Prods.*, 2008 U.S. Dist. LEXIS 143319, *3, is factually distinguishable and, like *DetailXPerts*, did not involve deprivation of constitutional rights.  And finally, *Wells Fargo & Co. v. WhenU.com, Inc*., 293 F. Supp. 2d 734, 772 (E.D. Mich. 2003) (which stated "[s]ignificant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm") is distinguishable as the court in that case did not perform any analysis with respect to the timing of a preliminary injunction relating to constitutional claims or on facts analogous to the instant matter.  In all of the foregoing non-constitutional cases, whether it is the running of a clock on a non-compete clause, or saturation of the market in a trademark case, there are counterbalancing considerations to ending the violations of a contract or trademark infringement, namely reliance interests at issue for the other party.  Those interests are not present when the Government violates the law.

Similarly, the cases cited by Defendants relating to the Mask Mandate in other jurisdictions are both factually and legally distinguishable and do not support the Court finding against irreparable harm in this matter. *Wall v. CDC*, No. 21-cv-975 (M.D. Fla.) *Wall v. CDC*, 2021 U.S. Dist. LEXIS 24297 (finding no irreparable harm where plaintiff claimed to be unable to wear a mask but had not applied for an exemption); *Wall v. Southwest Airlines*, No. 6:21-cv-1008, Order at 6-7, ECF No. 153 (M.D. Fla. Dec. 8, 2021); *Wall v Southwest Airlines*, 2021 U.S. Dist. LEXIS 221188 (filed by the same plaintiff in *Wall v. CDC* and finding that, with respect to a TRO filed by a third party movant who was banned from Alaska Airlines for refusing to wear a mask, that

there was no irreparable harm); *Eades v. TSA*, No. 21-3362 (8th Circuit) (stay pending appeal denied where plaintiff claimed disability prevented him from wearing a mask and as a result he was "thrown off a flight"); *Kleanthis Andreadakis  v. TSA*, No. 21-2173 (4th Circuit) (denying a stay pending appeal where plaintiff claimed he could not wear a mask and needed to travel); and *Faris v. TSA*, No. 21-3951 (*Faris v Transp. Sec. Admin.*, 2021 U.U. App. LEXIS 32446) (denial of emergency injunction on appeal where plaintiffs claimed that medical conditions prevented them from wearing masks and that plaintiff was added to a terrorist watch list as a result of filing litigation). None of the Members have alleged that they are medically or otherwise unable to wear a mask.  Further, many of these cases involved a stay denial which is "not a decision on the merits of the underlying legal issues," *Ind. State Police Pension, Tr. v. Chrysler LLC*, 556 U.S. 960 (2009) and the court undertakes a different analysis than it does in a preliminary injunction motion. *Id*. Significantly, each of these previous cases did not involve valid claims of constitutional injury and uncompensated monetary loss, all of which have been held to be irreparable.

## II.      **The Members Are Likely to Succeed on the Merits**

Defendants' arguments that the Members are unlikely to succeed on the merits of their claims is unpersuasive and not supported by adequate legal or factual citations.  For the reasons discussed below, the Members are likely to succeed on the merits of their claims that: (i) there is no statutory authority for the Mask Mandate; and (ii) any authority purportedly granted to the CDC from Congress for the Mask Mandate violates the Nondelegation Doctrine and raises issues under the Major Questions Doctrine.

### A. **The Mask Mandate is not a "sanitation" measure under 42 U.S.C. § 264**

Defendants' main argument is that the Mask Mandate is a "sanitation measure that falls squarely within the CDC's statutory authority to control and prevent disease." This is incorrect. Defendants' repeated and baseless assertions that masks are a "sanitation" measure are bare of any

supporting legal or factual citations and so the argument fails.  (*See e.g.* Opp. At 14, 15, 18, 19).

Defendants attempt to fit a square peg in a round hole, with comparisons of masks to other

"sanitation measures" such as wearing gloves or a gown, or to disinfecting surfaces (Opp. at 15).

These comparisons are similarly unsupported by any factual or legal citations.  Defendants'

reference to hand sanitizer further illustrates the weakness of Defendants' argument as hand

sanitizer, unlike masks, is a product that kills germs on contact.[8]  (*Id.*)

42 U.S.C. § 264(a) allows for "inspection, fumigation, disinfection, sanitation, pest

extermination, destruction of animals or articles found to be so infected or contaminated as to be

sources of dangerous infection to human beings, and other measures…"  Defendants'

interpretation of the statute ignores Congress's important and deliberate context and structure

found therein.  That statutory structure reveals a variety of specific, listed steps that can be taken

to eliminate the disease at issue with regard to animals or articles that are found to be infected or

contaminated with that disease.  Masks do none of those things: they do not inspect, fumigate,

disinfect, sanitize, exterminate, or destruct infected animals or articles.

Defendants' arguments also require the Court to analyze and interpret the term "sanitation"

in isolation which is not how case law establishes courts should interpret statutes.  *See Sealed*

*Appellee 1 v. Sealed Appellant 1*, 767 F.3d 418, 2013 U.S. App. LEXIS 26127, 2013 WL 9541979,

421, "[a] statute must be read as a whole, and individual terms or phrases should not be interpreted

in isolation."  Reading "sanitation" in context with the words around it, the Supreme Court stated

in *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021) that "inspection, fumigation,

disinfection, sanitation, pest extermination, and destruction of contaminated animals and

---

[8]   Hand sanitizer acts by killing certain germs on the skin. (available at
https://www.cdc.gov/handwashing/hand-sanitizer-use.html) (last accessed April 13, 2022).

articles... directly relate to preventing the interstate spread of disease by identifying, isolating, **and destroying the disease itself.**" (emphasis added).  Defendants conveniently (and deliberately, as they must to prevail on their argument) leave out the Supreme Court's caveat of "destroying the disease itself" when they unconvincingly try to argue that a mask "'directly' reduces transmission by 'isolating' viral particles and preventing them from becoming airborne." (Opp. at 16).  Even if this flimsy argument were true, the mask is not destroying the disease and therefore, this argument fails.  A mask does not "destroy a disease itself" and thus is not a "sanitation" measure as the Supreme Court has explained it in *Ala. Ass'n of Realtors v. HHS*.  Defendants again fail to support even their assertion that a mask will isolate viral particles, preventing them from becoming airborne, with any legal or factual citations continuing their conclusory argument that masks could fall under the dictionary definitions of "sanitation" that Defendants reference.[9] (Opp. at 14).

Additionally, any measures put in place pursuant to 42 U.S.C. § 264(a) must involve "direct targeting of disease." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021).  Defendants' arguments and citations in support thereof do not support a finding by this Court that the Mask Mandate, or masks, involve "direct targeting of disease." Given that the Mask Mandate applies to all travelers regardless of whether a traveler has been found infected with or is capable of spreading disease, is not limited to travelers who come from areas where the disease is particularly prevalent, or any similar factors, the Mask Mandate cannot be categorized as a measure involving "**direct targeting** of disease." *Id*. (emphasis added); the Mask Mandate is a measure targeting every single individual, regardless of health, vaccination status, natural immunity, where they begin or end their

---

[9] Dictionary definitions are not dispositive. "[T]he meanings of common words (which typically have multiple definitions) must be determined in the context in which they appear." *Texas v. United States EPA*, 983 F.3d 826, 836 n.2 (5th Cir. 2020). Moreover, it is doubtful that even Defendants themselves considered anything sanitized by merely wearing a mask, or that they ever wore a mask in their home to "sanitize" the air in their home.

travels, or any other factor.  It is not "directly" targeting anything, including a disease.

### B.  CDC's interpretation is not reasonable and is not entitled to deference

While Defendants' main argument centers around the Mask Mandate being a "sanitation" measure, Defendants tangentially argue if the Mask Mandate is *not* found to be a "sanitation" measure, it falls into "other measures."  Defendants argue that in either case, the CDC's interpretation of "sanitation" or "other measures" is reasonable and entitled to deference. Defendants' reliance on *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) (hereinafter, "*Nat'l Cable*") to support their argument that the Court should defer to the CDC's definition of "sanitation" and "other measure" is misplaced as this case analyzes an FCC ruling under the Telecommunications Act of 1996 relating to the definition of "information service," (*id*.), which is factually distinguishable from this case.  *Nat'l Cable* also discussed a "*Chevron*" analysis in its determination of the issues, which Defendants do not address in their arguments on deference.[10]  Regardless, the Sixth Circuit has already held that the statute at issue is not ambiguous, and thus *Chevron* deference does not apply.  *Tiger Lily, LLC v. United States HUD*, 992 F.3d 518, 522, n.3 (6th Cir. 2021).  In *Tiger Lily*, the Sixth Circuit explained that the statute at issue involved "government intrusion on property to sanitize and dispose of infected matter." *Id.* at 523.  Clearly, "government intrusion on *property* to sanitize and dispose of infected *matter* is different in nature from" forcing millions of *people* to don a face covering that does not sanitize or dispose of infected matter.  The Mask Mandate is, therefore, outside the statute's scope according to the Sixth Circuit.  *Id.* (emphasis added).

In fact, the CDC's interpretation of "sanitation" or "other measures" to provide authority

---

[10] The continued validity of *Chevron* deference generally, as well as its scope, is now before the U.S. Supreme Court, *AHA v. Becerra*, 2021 U.S. LEXIS 3578, 141 S. Ct. 2883, 210 L. Ed. 2d 990, 89 U.S.L.W. 3444, 2021 WL 2742784.

for the Mask Mandate is contrary to existing case law analyzing the language of 42 U.S.C. §

264(a).  In *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1268 (M.D. Fla. 2021), the court stated:

> [B]ut Florida correctly observes that the second sentence [of 42
> U.S.C. § 264(a)] operates to limit CDC's enforcement and
> implementation authority to only those actions resembling
> "inspection, fumigation, disinfection, . . . [and] pest
> extermination. As explained in *Alabama Ass'n of Realtors v. United
> States Dep't of Health & Hum. Servs.*, 2021 U.S. Dist. LEXIS
> 85568, 2021 WL 1779282, at *5 (D.D.C. 2021), 'the first sentence
> of § 264(a) is tethered to — and narrowed by — the second
> sentence.' The second sentence of Section 264(a) discloses,
> illustrates, exemplifies, and limits to measures similar in scope and
> character the measures contemplated and authorized by Congress
> when enacting the statute.

Defendants want to look at the word "sanitation" and "other measures" as stand-alone

words.  But as *Florida v. Becerra* establishes, any action the CDC wants to take has to be within

the guidelines contemplated by Congress in the carefully crafted interplay of these two sentences.

If "sanitation" was to be interpreted by this Court in the way Defendants argue it should be

interpreted, Defendants' reading would also encompass the other measures explicitly stated

rendering them essentially superfluous.  If "sanitation" meant any preventative measure that could

limit transmission of disease, then there would be no need to specifically include "fumigation,"

"disinfection," or "extermination" as these would all be forms of "sanitation."  Likewise, "other

measures" cannot be construed as broadly as Defendants argue as "This kind of catchall provision

at the end of a list of specific items warrants application of the *ejusdem generis* canon, which says

that 'where general words follow specific words in a statutory enumeration, the general words are

construed to embrace only objects similar in nature to those objects enumerated by the preceding

specific words.'"  *Tiger Lily, LLC*, 992 F.3d at 522.  Defendants provide no support that their

interpretations are what Congress contemplated when enacting the statute.  "It is a cardinal

principle of statutory construction that a statute ought, upon the whole, to be so construed that, if

10

it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Asadi v. G.E. Energy United States, L.L.C.*, 720 F.3d 620, 628 (2013).

The CDC's interpretation is also not reasonable considering where 42 U.S.C. § 264(a) appears within the structure of the Public Health Services Act (the "**Act**"). Its placement within the sections of the Act governing "quarantine and inspection" supports the Members' interpretation and is in line with the holding in *Ala. Ass'n of Realtors v. HHS* that the language of 42 U.S.C. § 264(a) concerns "direct targeting of disease." A "title of a statute can aid in resolving the meaning of legislative text." *United States v. Barnes*, 803 F.3d 209 (5th Cir. 2015), 222-223.

Further, multiple courts have noted that 42 U.S.C. § 264(a) relates to property interests. "To slow disease transmission, the HHS Secretary…can impose specific restrictions on both property interests, *see* 42 U.S.C. § 264(a), and liberty interests, *see id*. § 264(d)." *Tiger Lily, LLC v. United States HUD*, 992 F.3d 518, 522. The regulations [that mirror the language of 42 U.S.C. § 264(a)], "also include intrusions on private property, such as its 'inspection, fumigation, disinfection, sanitation,' and even 'destruction.' *Id.* at § 264(a)." *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 111 (W.D. La. 2020)). The distinction drawn between 42 U.S.C. § 264(a), which deals with property, and 42 U.S.C. § 264(d), which deals with persons, is underscored by the plain language in 42 U.S.C. § 264 (a) itself, as it is not persuasive that Congress meant to provide for the "fumigation" or "inspection" or "disinfection" of people. 42 U.S.C. § 264(d) is the only part of the statute that concerns the regulation of people and requires that a person be "reasonably believed to be infection with a communicable disease" before control measures are triggered. When specifically pertaining people in 42 U.S.C. § 264(d), Congress used the word "examination" in contrast to when the statute applies to property interests where the term

11

"inspection" is used.  This comports with common usage of these words – a house is "inspected" while a doctor would "examine" a person.

Thus, wearing a mask is not an action resembling those specifically included in 42 U.S.C. § 264(a), is not a reasonable interpretation of the statute, and therefore the CDC is not entitled to deference in its interpretation.  It is only when "the statute's language is plain" that the "sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004).

This Court should not allow such a broad reading of 42 U.S.C. § 264(a) which would permit the CDC to force all air travelers to wear masks.  This would create a slippery slope for future regulations that the CDC may argue are authorized by 42 U.S.C. § 264(a), as the CDC has shown its tendency to construe this statute to give it broad sweeping powers in the context of Covid-19. *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485 (2021) (concluding that the CDC's eviction moratorium exceeded its statutory authority). If the CDC does not have the authority for the Mask Mandate, as the Members have shown it does not, the Court should find the Members have a likelihood of success on the merits and grant this Motion for a preliminary injunction.

### C.  Defendants' interpretation of 42 U.S.C. § 264(a) violates the non-delegation clause to the Constitution

Defendants recognize that congressional delegation to an agency can be unconstitutional under the nondelegation doctrine if no adequate guidance is provided for the exercise of discretion. (Opp. at 20-21).  Defendants fail to show how their interpretation of § 264(a) adequately guides the CDC in its exercise of discretion.  Defendants point to the holding in *AAR* as adequately guiding § 264: "[A]ny [nondelegation] doubt is resolved by the second sentence, as interpreted in *AAR*, in which the Supreme Court stated that the scope of 42 U.S.C. § 264(a) is 'inform[ed]' by the list of six specifically authorized measures (*i.e.*, inspection, fumigation, disinfection, sanitation, pest

extermination, and destruction). *AAR,* 141 S. Ct. at 2488." (Opp. at 21). But any limitations offered by § 264(a)'s second sentence are meaningless for purposes of Defendants' argument against finding unconstitutionality under the nondelegation doctrine if Defendants can pick and choose one of the six "specifically authorized measures" and tailor it to whatever measure the CDC wants to enact. The CDC is attempting to do that here, by encompassing the Mask Mandate in the definition of "sanitation" as "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions." (Opp. at 14). If "sanitation" can be read so broadly as to allow the CDC to force all air travelers to wear masks into perpetuity, it is hard to imagine a Covid-19-related measure that would not fall under this broad interpretation of "sanitation."

Allowing the CDC to adopt broad definitions of its authority without being confined by the statute's context, structure, and history does not meaningfully constrain their discretion. If Congress meant to give the CDC such unlimited power, they needed to "provide substantial guidance." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001). Defendants' interpretation gives them the ability to vastly expand their authority using broad definitions, and the Court should therefore hold that their interpretation of the statute violates the nondelegation doctrine.

III.    **The Public Interest is Always Served by Enjoining Unlawful Statutes and Regulations**

In *State v. Biden*, 10 F.4th 538, 559-60 (5th Cir. 2021) the Fifth Circuit recently stated, the "public interest [is] in having government agencies abide by the federal laws that govern their existence and operations." *Biden*, 10 F. 4th at 560 further stated, "[t]here is generally no public interest in the perpetuation of unlawful agency action." "The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions – even, or perhaps *particularly*, when those decisions frustrate government officials." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th

13

604, 618-19 (5th Cir. 2021).   Whether local governments have the authority to issue mask mandates, or whether courts in other contexts, analyzing other mask laws, found in favor of a mask requirement is irrelevant to whether 42 U.S.C. § 264(a) authorizes the CDC to issue the Mask Mandate.  This case is not about the merits of mask wearing (it is worth noting that a preliminary injunction would not prevent Defendants from strongly encouraging masks nor would it prevent those who want to wear them from doing so) and Covid-19 related statistics do not come into play; instead, the relevant inquiry is whether the CDC has the authority to issue and implement the Mask Mandate.  Defendants argue that the benefit of masks outweighs the harms, but "[o]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. at 2490.  Where the government is on the other side of the case, as is the case here, case law is clear that the third and fourth injunction factors, harm to others and public interest, collapse into the success on the merits prong.  *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001); *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021); *Jones v. Caruso*, 569 F.3d 258, 277-278 (6th Cir. 2009) ("it is always in the public interest to prevent the violation of a party's constitutional rights"); *Rhinehart v. Scutt*, 509 Fed. Appx. 510 (6th Cir. 2013).

**IV.**   **The Preliminary Injunction Should be Nationwide and Not Limited to Members Paul and Massie**

Member Paul and Member Massie's declarations were illustrative of the irreparable harm all Members are suffering.  Defendants offer no support for their argument that because Members Paul and Massie were the only Members to submit declarations in support of this motion for a preliminary injunction that any preliminary injunction must be limited to just Members Paul and Massie.  All the named Plaintiffs are from around the country, and travel throughout the country in the course of their duties.  Further, how are the airlines or TSA to know whom to exempt and

14

whom not to in the event of a limited injunction?

Practical challenges of implementing a preliminary injunction enjoining the Mask Mandate for just two individuals would likely negate any benefits of same.  Should the Court issue the requested preliminary injunction, it will be because this Court finds that the Members are likely to succeed on their claim that the CDC lacks authority to make all air travelers wear masks.

In their reference to *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) Defendants choose one sentence in isolation and ignore the context in which the court said "[t]he Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," which was that, "this Court is not responsible for vindicating generalized partisan preferences."  However, the Members' claims do not involve generalized partisan preferences.  *Gill* also states a plaintiff's remedy must be "limited to the inadequacy that produced [his] injury in fact." The inadequacy that has injured the Members is the lack of authority to issue the Mask Mandate which applies to all Members and all air travelers in the United States. "The Constitution vests the District Court with the judicial Power of the United States. That power is not limited to the district wherein the court sits but extends across the country. It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction." *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) (affirming a nationwide preliminary injunction against DAPA, which applied nationwide).  Rather, as was the case in *Ala. Ass'n of Realtors*, 141 S. Ct. 2485, 2489, because a general rule that applies to all Americans is illegal, relief should extend to all Americans in the same way the Supreme Court afforded it in that matter.

## CONCLUSION

For the foregoing reasons, the Members respectfully request that the Court grant their Motion for a Preliminary Injunction.

Dated: April 15, 2022

**SIRI & GLIMSTAD LLP**

_____/s/ Aaron Siri_____
Aaron Siri (Pro Hac Vice)
Elizabeth A. Brehm (Pro Hac Vice)
Catherine Cline (Pro Hac Vice)
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
aaron@sirillp.com
ebrehm@sirillp.com
ccline@sirillp.com

Ursula Smith (Pro Hac Vice)
100 Congress Avenue, Suite 2000-4590
Austin, Texas 78701
Tel: (512) 265-5622
usmith@sirillp.com

**Chris Wiest, Attorney at Law, PLLC**

Christopher Wiest (KBA #90725)
Chris Wiest, Attorney at Law, PLLC
25 Town Center Blvd, Ste. 104
Crestview Hills, Kentucky 41017
Tel: (513) 257-1895
chris@cwiestlaw.com

_Attorneys for Members_

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon each Defendant by this Court's

CM/ECF system, this 15 day of April 2022.


___/s/ Aaron Siri____
Aaron Siri, Esq.

17